# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **JEROMY PITTMANN,** <br>             **Defendant.** | Case No. 1:22-mj- 07-01-AJ |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Kevin Naylon, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I am a Special Agent with the U.S. Special Inspector General for Afghanistan Reconstruction ("SIGAR"). I have been in this position since July 2012. Before joining SIGAR, I was a Special Agent with the United States Naval Criminal Investigative Service for nearly 24 years. I have conducted investigations into white collar crime, including fraud against the government, theft of government property, wire fraud, and money laundering. I possess an undergraduate degree in public administration from Virginia Commonwealth University.

2.  From my work with SIGAR, I have prepared affidavits to support the establishment of probable cause for search warrants. I am familiar with the facts set forth below based upon my own investigative findings and conversations with other participating law enforcement agents. Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that JEROMY PITTMANN ("PITTMANN"), a United States citizen who resides in Naples, Italy and Pensacola, Florida, and other individuals, have committed violations of 18 U.S.C. § 201(b)(2)(B) (Bribery) and 18 U.S.C. §§ 371, 1546 (Conspiracy to Commit Fraud and Misuse of Visas, Permits, and Other Documents).

3. As set forth below, I submit there is probable cause to believe that from at least in or around February 2018 through September 2020, PITTMANN, and others known and unknown, intentionally engaged in a bribery and visa fraud scheme in which a co-conspirator paid PITTMANN to draft, submit, or falsely verify fraudulent letters of recommendation for citizens of Afghanistan, who were applying to the U.S. Department of State for Special Immigrant Visas ("SIVs").

4. Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I learned from other law enforcement agents. Because this affidavit is limited in purpose, I am not including all facts known to law enforcement concerning this investigation. Instead, I have set forth only those facts that are necessary to establish probable cause for the complaint sought herein. In addition, where the contents of documents, or the action, statements, and conversations of others are reported herein, they are reported in sum and substance, and in part, except where otherwise indicated. All dates are alleged to be "on or about" the dates stated.

5. This Court has jurisdiction to issue the requested warrant under 18 U.S.C. § 3237. As discussed more fully below, acts in furtherance of the offenses under investigation occurred within the District of New Hampshire.

## RELEVANT STATUTES

6. As provided in 18 U.S.C. § 201, "Whoever . . . being a public official . . . directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for . . . being influenced to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; shall be fined under this title or not more than three times the

monetary equivalent of the thing of value, whichever is greater, or imprisoned for not more than fifteen years, or both, and may be disqualified from holding any office of honor, trust, or profit under the United States." For the purpose of this section, the term "public official" means, among others, "an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government."

7. As provided in 18 U.S. C. § 371, "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

8. As provided in 18 U.S.C. § 1546, "Whoever knowingly . . . presents any . . . application, affidavit, or other document [required by the immigration laws or regulations prescribed thereunder] which contains any . . . false statement [with respect to a material fact] or which fails to contain any reasonable basis in law or fact . . . [s]hall be fined under this title or imprisoned not more than . . . 10 years (in the case of the first or second such offense . . . ), or 15 years (in the case of any other offense), or both."

9. Federal law authorizes a limited supply of SIVs each year for Afghan nationals. Section 602(b) of the Afghan Allies Protection Act of 2009, as amended, is a special immigrant program, which authorizes the issuance of SIVs to Afghan nationals who meet certain requirements and who were employed in Afghanistan: by or on behalf of the U.S. government in Afghanistan, or by the International Security Assistance Force ("ISAF"), or a **successor mission**, in a capacity that required the applicant to serve as an interpreter or translator for U.S. military personnel while traveling off-base with U.S. military personnel stationed at ISAF or to perform

activities for the U.S. military personnel stationed at ISAF. In addition, Section 1059 of the National Defense Authorization Act ("NDAA") for Fiscal Year 2006 authorizes the issuance of up to 50 SIVs annually to Iraqi and Afghan translators and interpreters working for the U.S. military and who meet certain requirements. Each program requires a written or documented letter of recommendation in support of the SIV applicant from a person associated with the U.S. government or ISAF with knowledge of the Afghan national's employment

## **PROBABLE CAUSE**

10. In or around September 2020, the U.S. Department of State ("DoS") received a complaint alleging that false letters of recommendation for Afghan citizens applying for SIVs had been written by a U.S. servicemember named "JERMMY PITTMANN CPT." The investigation has revealed that PITTMANN is a Commander in the U.S. Navy Reserves, and is accordingly a "public official" within the meaning of 18 U.S.C. § 201(a)(1). *See*, *e.g.*, *United States v. Whiteford*, 676 F.3d 348, 358 (3d Cir. 2012) (collecting authorities). The investigation to date has revealed, and PITTMANN has admitted, that he submitted false and fraudulent recommendation letters to DoS in support of SIV applications for individuals who PITTMANN did not know, and that PITTMANN received things of value in exchange for submitting these false and fraudulent recommendation letters.

11. The DoS National Visa Center, which is located in Portsmouth, New Hampshire, is responsible for processing SIV applications, including contacting individuals who have signed letters in support of SIV applicants in order to verify the authenticity of such letters.

12. Your Affiant has reviewed DoS records which show PITTMANN signed over 20 SIV applicant letters between May 2018 and September 2020 on behalf of individuals whom he did not have the ability to personally vouch for. One example of such a letter is below:

> My name is Jeromy Pittmann and I am Engineer Officer for NSOCC-A which is located in Afghanistan until March 2015.
>
> I am writing this letter to recommend [applicant] for consideration to the Special Immigrant Visa (SIV) program. [Applicant] has worked in support of United States army and NATO forces since July 2012 for a trusted local national company as a translator. I personally, have been supervising [applicant] since 7 March 2014 up to 02 March 2015. During this time he has had excellent performance in all aspects of work and provided faithful and valuable service to the United States Forces in Afghanistan. I have known him to be a diligent, polite and hardworking individual.
>
> Just by being a translator directly supporting the United States army and NATO forces his life is in jeopardy some of the extremist and Taliban consider him a traitor despite his hardship he always shows up for work. I do not see [applicant] as a threat to the United States and in my opinion he would become a productive member of American society if allowed to emigrate. He is concerned for him and his family's safety one the NATO and U.S. pull out of Afghanistan. He has faced threats as a result of the employment and therefore he feels he will be a target of anti-government forces, and will be specifically targeted due to his work for the U.S. In summary I highly recommend him for approval of a special immigration VISA (SIV) and I don't think he poses a threat to the national security or the safety of the United States of America.

13.  On December 13, 2019, a DoS representative sent an email to PITTMANN:

> We received a letter from you in support of an application for a Special Immigrant Visa for [the above applicant]. In order to move forward with the visa application, the National Visa Center kindly asks that you verify the attached document and attest to its authenticity . . . The National Visa Center is also required to verify the U.S. citizenship of those who provide recommendations for applicants of the Special Immigrant Visa Program. If you still recommend this applicant, please provide evidence of your U.S. citizenship, such as a copy of the photo/biographical page from your U.S. passport or your passport number.

14.  In reply to the foregoing email, PITTMANN falsely stated: "This one is approved. My passport number is 515036571." Pittmann's emailed reply to the National Visa Center in New Hampshire, in which he made the foregoing statement, was both an overt act in furtherance of the conspiracy to commit fraud and misuse of visas, permits, and other documents, and a crucial act in the scheme to defraud the United States for which he agreed to receive, and did receive, payments from CC-1. More specifically, your Affiant believes that the foregoing statement was

5

false based on records obtained from PITTMANN's email account that are described in the next section.

### A. Email Demonstrates That PITTMANN Drafted Fraudulent SIV Letters

15. On February 3, 2018, a co-conspirator ("CC-1") emailed PITTMANN: "I have been contacted some people they needed a recommendation letter from an American supervisor or engineer or COR [Contract Representative]. Do you think you can write them a recommendation letter for SIV? They will pay for it." PITTMANN asked, "Who is this for?" CC-1 replied: "It's for my cousins I have 5 of them to go if you can do it will be good and they will pay for it." CC-1 thereafter sent an email attaching "a recommendation letter format for your review."

16. On February 15, 2018, PITTMANN replied: "How much is he paying?" After some further discussion, CC-1 replied: "500 each so it's 3 of them total will be 1500 [a]n[d] other 2 end of this week will bring their ID so it will be another 100 I will have another 5 next week so will be 2500. [Don't] forget my sweet as well[.]" PITTMANN replied, "Send me the info."

17. On May 6, 2018, CC-1 emailed PITTMANN, "I am going to send you details for 3 employees[.]" PITTMANN responded, "I'll have to look up the write-up you sent a while ago. Which bases were these guys at?" CC-1 replied, "NKAIA, Bagram and Camp Marmal Mazar." PITTMANN thereafter told CC-1: "I need to write something about what they did and where. Same goes for all the others. Otherwise, it doesn't look personal or professional."

18. On May 16, 2018, PITTMANN sent a draft and asked, "Is this good?" CC-1 replied: "[I]f you could please use this attached format will be better. [I]t's because this is the official form at they accept the letter." PITTMANN sent a new draft and asked, "How is this?" CC-1 replied, "Yeh it's good now. May 2015 is it the correct date you were in Afghanistan?"

PITTMANN replied with a new draft and stated, "Here you go." CC-1 then instructed PITTMANN to make edits such as correcting dates during which PITTMANN was in Afghanistan.

19. On May 23, 2018, CC-1 emailed PITTMANN: "I sent them out the SIV office want these letters to be hand signed and your passport# as proof US citizen. I have update[d] the letters with current date so you will need to sign them and add your passport# below where it's written passport#." PITTMANN replied, "That is a big negative. I am not allowed to provide my passport number." PITTMANN ultimately used his passport number to verify fraudulent SIV letters when responding to inquiries from the National Visa Center in New Hampshire (see Paragraph 10).

20. PITTMANN submitted these letters even though he was not personally acquainted with the applicants, and his statements about the applicants were false and fraudulent when made.

**B. Email Demonstrates That PITTMANN Received Bribes Trough Wire Transfers**

21. On May 27, 2018, PITTMANN emailed CC-1, "Here are all 3." Attached to the email were three SIV recommendation letters, each of which stated that PITTMANN knew the applicant "worked in support of United States army and NATO forces," the applicant was "a diligent, polite and hardworking individual," and the applicant did not pose "a threat to the national security or safety of the United States of America," among other things.

22. On July 5, 2018, PITTMANN emailed CC-1 and stated he was not able to print the letters. CC-1 replied, "I will adjust the letters with their details and your signature. Once you return from holiday [Independence Day] so you can print them for your record."

23. On July 11, 2018, CC-1 emailed PITTMANN: "I received the payment from guys waiting for your details so I can send you through western union." PITTMANN then responded, "What information do you need for western union?" CC-1 replied, "Full name, address, Natonal [sic] ID number or passport number, local phone number."

24.     On July 17, 2018, CC-1 sent an email to PITTMANN stating the following:

> The COMM office [National Visa Center] sent emails to [three SIV applicants]. All their documents were accepted and they may contact you for verification of the letter you can tell verify them. You have their information I guess. Their payment is with me so anyone you send me their info I will send it through western union. [Three other SIV applicants are] waiting for their rest of the documents and will bring their payment as well soon.

The next day, PITTMANN replied, "I need to write an invoice for the amount. How much will you be sending?" CC-1 replied, "I have 1500 USD [dollars] sending through western union th[e]y will charge [a]n[d] I guess th[e]y might charge 75 USD but not sure exactly I will find out today." CC-1 thereafter emailed PITTMANN: "The last 3 [applicants] will bring their payment as well. I have already adjusted their letters so you only keep their details with you. I made your job easy[.]"

25.     Also on July 18, 2018, PITTMANN asked, "Which one of your companies do you want me to put on the invoice so it looks official?" CC-1 replied, "Sunny Universe Construction Company. Through bank we can use wire transfer. Do you have bank account with Swift Code and bank address?" PITTMANN responded, "Here is the invoice," which was for "Consultant Services" in the name of "PITTMANN Enterprises, LLC" and "Jeromy PITTMANN, P.E. [Professional Engineer]." PITTMANN also sent his USAA bank account and routing number. CC-1 thereafter followed up, "Did you receive any email from SIV office yet to verify their letters?" PITTMANN responded: "I have. A bunch of them. Which names should I approve? I don't recognize them all." CC-1 instructed PITTMANN to approve the applicants that had paid and later stated "you can send me what names you receive from SIV office I will review them will tell you which one to approve."

26.     On July 21, 2018, PITTMANN emailed, "Any word from bank?" CC-1 replied: I am trying to contact a friend of mine who is in California. I see if he can transfer the money in your bank there then I can give his father here in Kabul I guess its best option with no fee [] trying

8

to save your money." CC-1 later stated: "He is going to deposit your account today 2000 USD. Ye[a]h all paid. So you can approve all of them." The next day, CC-1 added: "His father is calling me to pay him," and asked, "[C]ould you please check your bank so I can pay his father here[?]" and, "Did you respond to SIV Office emails for approvals?" PITTMANN replied, "All submitted."

27. On July 23, 2018, CC-1 emailed PITTMANN, "Could you please check your bank? He sent me the transfer receipt slip that he transferred into your account." The transfer slip indicated that the money had been wired to a Bank of America account in Hayward, California and was thereafter wired to PITTMANN's USAA account in Pensacola, Florida for the purpose of "Family Support." PITTMANN replied, "I got it today. Thank you and thank your friend for sending it. I just wish the money would keep coming. Ha. Maybe one day we will get a business started. It would be nice to pay off my debts." CC-1 replied, "I have more employees asking for recommendation letter I will let you know. Have you verified the letters to SIV so they can proceed with next step?" PITTMANN responded, "Letters have already been verified."

28. On July 25, 2018, PITTMANN emailed CC-1, "We need some contracts so we can make some real money," to which CC-1 replied:

> [D]efinitely we need a contract. There are contracts on training with MOI [a]n[d] MOD [the Afghan Ministries of Interior and Defense] but me and you don't have enough financial support to get started unless if you can get a loan from bank so we both can get start a business. Here I have spoken with security company they said they won't unless if we can get a contract then th[e]y will invest. Th[e]y won't take a risk I said its not risky once we start [I] am sure we will get a contract.

29. Over the next years, PITTMANN continued conspiring with CC-1 to submit fraudulent SIV applications to DoS. For example, in September 2019, CC-1 emailed PITTMANN: "I will send you details for 3 employees for letters . . . [M]y wife says she want to send [PITTMANN's wife] a Ring, what's her finger size, do you know that?" Three days later, PITTMANN stated her "ring size is 6 or 7." CC-1 followed up: "I am gonna send you tomorrow

9

few employees details so you keep their details for verification and I will send you their sweets as well that will make a good joy for a month or two. Haha." PITTMANN replied, "Thank you!"

30. That same month (September 2019), PITTMANN signed multiple SIV letters, including the SIV letter described in Paragraph 9.

31. In furtherance of the scheme, PITTMANN's fraudulent verifications were submitted via electronic communication to the National Visa Center in New Hampshire. Furthermore, PITTMANN's fraudulent verifications had the capacity to influence the National Visa Center's decision-making in processing the applications. Upon learning of the complaint SIGAR received, DoS implemented internal lookouts on pending SIV applications associated with PITTMANN.

## CONCLUSION

32. Accordingly, there is probable cause to believe that PITTMANN engaged in violations of criminal law, specifically one count of 18 U.S.C. § 201 (Bribery), and one count of 18 U.S.C. §§ 371, 1546 (Conspiracy to Commit Fraud and Misuse of Visas, Permits, and Other Documents).

Respectfully submitted,

/s/ *Kevin Naylon*
Special Agent
Special Inspector General for Afghanistan Reconstruction

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Date: **Jan 11, 2022**

Time: **3:06 PM, Jan 11, 2022**

Andrea K. Johnstone
U.S. Magistrate Judge